# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                      No. CR 11-2367 JB

JESUS VALDEZ-FLORES,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Sentencing Memorandum, filed January 11, 2012 (Doc. 21).  The Court held a sentencing hearing on January 25, 2012.  The primary issues are: (i) whether the Court should depart downward pursuant to U.S.S.G. § 5H1.3 based on Defendant Jesus Valdez-Flores' mental and emotional conditions; (ii) whether the Court should depart downward pursuant to U.S.S.G. § 5H1.4 based on Valdez-Flores' physical condition; (iii) whether the Court should depart downward pursuant to U.S.S.G. § 5H1.6(b) based on his family ties and responsibilities; (iv) whether the Court should depart downward pursuant to U.S.S.G. § 2L1.2 based on cultural assimilation; and (v) whether the Court should vary downward to a probated sentence or sentence of less than two years.  The Court will grant in part and deny in part the requests in the Sentencing Memorandum.  The Court will deny the requests for a downward departure, but will grant a variance, although not to a probated sentence.  The Court will sentence Valdez-Flores to 21-months imprisonment.

## PROCEDURAL BACKGROUND

On September 7, 2011, Valdez-Flores, pursuant to a Non-Standard Fast Track Plea

Agreement, filed September 7, 2011 (Doc. 15)("Plea Agreement"),[1] pled guilty to the Information,

---

[1]"To expedite the handling of large volumes of cases involving persons accused of immigration offenses, certain judicial districts employ fast-track programs." United States v. Martinez-Trujillo, 468 F.3d 1266, 1268 (10th Cir. 2006), overruled by United States v. Lopez-Macias, 661 F.3d 485 (10th Cir. 2011). "In section 401(m)(2)(B) of the PROTECT Act of 2003, Pub. L. No. 109–21, § 401(m)(2)(B), 117 Stat. 650, 675, Congress approved early disposition or fast-track programs if certain conditions are met." United States v. Rocha-Nunez, No. 11-2848, 2012 WL 1372288, at *5 (D.N.M. Apr. 16, 2012)(Browning, J.).

> A provision of the PROTECT Act directed the United States Sentencing Commission to "promulgate . . . a policy statement authorizing a downward departure of not more than 4 levels if the Government files a motion for such departure pursuant to an early disposition program authorized by the Attorney General and the United States Attorney." Pub. L. No. 108-21, § 401(m), 117 Stat. at 675. The Sentencing Commission accordingly added a new Guidelines section, effective October 27, 2003, authorizing such four-level departures. See U.S.S.G. § 5K3.1, p.s.

United States v. Morales-Chaires, 430 F.3d 1124, 1127 (10th Cir. 2005)

Originally, as the United States Court of Appeals for the Tenth Circuit has stated: "The decision to adopt the [fast-track program] in a district is made by the United States Attorney General and the United States Attorney for the district." United States v. Diaz-Devia, 425 F.App'x 764, 767 (10th Cir. 2011)(unpublished)(alterations in original). "In jurisdictions where fast-track programs have been authorized by the Attorney General, defendants must 'agree to the factual basis [of the criminal charge] and waive the rights to file pretrial motions, to appeal, and to seek collateral relief (except for ineffective assistance of counsel).'" United States v. Morales-Chaires, 430 F.3d at 1127 (alterations in original). The benefit to defendants under these programs is that they receive a shorter sentence, which is "accomplished either by charge-bargaining or by [the prosecutor] promising to recommend a downward departure at sentencing." United States v. Morales-Chaires, 430 F.3d at 1127. New Mexico is one of the States that has its own fast-track program. See United States v. Sanchez-Juarez, 240 F.App'x 259, 262 n.2 (10th Cir. 2007)("In any event, Sanchez-Juarez was prosecuted in the United States District court for the District of New Mexico, a jurisdiction that has a fast-track program in place.").

The United States Attorney General recently adopted a policy of implementing the fast-track program nationally for illegal re-entry cases. See Memorandum from James M. Cole, Deputy Attorney General, to the United States Attorneys at 2 (Jan. 31, 2012), available at http://www.justice.gov/dag/fast-track-program.pdf [hereinafter Memorandum] ("After consultation with the United States Attorneys in both affected and non-affected districts, the Department is revising its fast-track policy and establishing uniform, baseline eligibility requirements for any defendant who qualifies for fast-track treatment, regardless of where that defendant is prosecuted."). The Attorney General stated that it would require certain "baseline eligibility requirements" for a particular district to maintain such a fast-track program, including: (i) having the United States Attorney in each district retain discretion to limit a defendant's participation in the program in light of various factors, such as criminal history and number of illegal re-entries; (ii) requiring a written

-2-

filed September 7, 2011 (Doc. 12), charging a violation of 8 U.S.C. § 1326(a) and (b), that being Re-entry of a Removed Alien.  See Plea Agreement ¶ 3, at 2.  Pursuant to the Plea Agreement, under rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the parties agree to a reduction of 2 offense levels based on acceptance of responsibility and, if applicable, a reduction of an additional offense level under U.S.S.G. § 3E1.1.  See Plea Agreement ¶ 6(a), at 2.  The parties also agree that Valdez-Flores is entitled to a 1-level reduction under U.S.S.G. § 5K3.1 for his waiver of his appellate rights.  See Plea Agreement ¶ 6(b), at 2.  Valdez-Flores waives the right to appeal his conviction and any sentence within the advisory guideline range.  See Plea Agreement ¶ 12, at 5.

On November 17, 2011, the United States Probation Office ("USPO") disclosed a Presentence Investigation Report ("PSR") for Valdez-Flores.  The PSR calculates a base offense level of 8, pursuant to U.S.S.G. § 2L1.2(a).  See PSR ¶ 11, at 4.  The USPO applies an 8-level enhancement, pursuant to U.S.S.G. §2L1.2(b)(1)(C), because Valdez-Flores was previously deported after a conviction for an aggravated felony.  See PSR ¶ 12, at 4.  The USPO then applies a 3-level reduction, pursuant to U.S.S.G. § 3E1.1, for acceptance of responsibility.  See PSR ¶ 17, at 5.  Pursuant to the Plea Agreement, the USPO further reduced Valdez-Flores' offense level 1 level.  See PSR ¶ 19, at 5.  Accordingly, Valdez-Flores' total offense level is 12.  See PSR ¶ 19, at 5.  The USPO calculates a criminal history category of VI, based on 13 criminal history points.  See PSR ¶ 30, at 10.  A total offense level of 12 and a criminal history category of VI, establishes a guideline imprisonment range of 30 to 37 months.   See PSR ¶ 59, at 17.

On January 11, 2012, Valdez-Flores filed his Sentencing Memorandum.  Valdez-Flores asks

---

plea agreement with certain provisions, such as an agreement to waive appellate rights; and (iii) setting national standards regarding what levels of downward departures are permitted under the program.  Memorandum at 2-4.

that the Court impose a probated sentence or a sentence of less than two years.  See Sentencing

Memorandum at 1, 17.  With respect to a variance, Valdez-Flores argues that two of the 18 U.S.C.

§ 3553(a) factors support a lower sentence: (i) the nature and circumstances of the offense; and

(ii) the defendant's history and characteristics.  See Sentencing Memorandum at 9.  Valdez-Flores

asserts that he was born in Monterrey, Nuevo Leon, Mexico and that his family moved to California

when he was two years old, because there were no jobs in Mexico to support a family of thirteen.

See Sentencing Memorandum at 9-10.  He notes that his father died in 1979, and that his mother is

sixty-six years old and in very poor health.  See Sentencing Memorandum at 10.  He states that he

was six when his father died from cirrhosis of the liver because of excessive alcohol consumption,

and asserts that his father physically and verbally abused his family.  See Sentencing Memorandum

at 10.  Valdez-Flores represents that he graduated from high school in Los Angeles, California,

attended one year of technical college there, and then worked in a warehouse.  See Sentencing

Memorandum at 11.  He notes that, when he was first deported, he was in the process of becoming

a United States citizen.  See Sentencing Memorandum at 11.  Valdez-Flores states that he entered

into a common-law marriage in 1992 and has six children.  See Sentencing Memorandum at 11-12.

He asserts that he spent his entire life in California, that his primary language is English, and that

he has no family, friends, or ties to Mexico.  See Sentencing Memorandum at 12.  He also notes that

he suffers from tuberculosis.  See Sentencing Memorandum at 13.  He asks that the Court

downwardly vary "to impose a reduced sentence, because such a sentencing is sufficient, but not

greater than necessary, to comply with the purposes of sentencing in 18 U.S.C. § 3553(a)."

Sentencing Memorandum at 13.

        Valdez-Flores then makes his arguments that the Court should depart downward.  Valdez-

Flores first argues that the Court should depart downward pursuant to U.S.S.G. § 5H1.3 based on

-4-

his mental and emotional conditions. See Sentencing Memorandum at 14. He asserts that he has become very depressed, because he is worried about his mother's health and because he was his mother's primary caregiver. See Sentencing Memorandum at 14. He represents that his wife battles a drug addiction and that he does not know whether his children are being cared for. See Sentencing Memorandum at 14. Valdez-Flores also contends that the Court should downwardly depart pursuant to U.S.S.G. § 5H1.4 based on his physical condition. See Sentencing Memorandum at 14. He notes that his current symptoms are a hacking cough, fatigue, fever, and loss of appetite. See Sentencing Memorandum at 14. He asserts that the Torrance County Detention Center is currently treating his disease, but that it is a highly contagious bacterial infection passed from person to person through the air. See Sentencing Memorandum at 14. Valdez-Flores argues that the Court should decide the length of his incarceration "to allow him to seek appropriate medical attention and medications, as well as protect other inmates and staff." Sentencing Memorandum at 15. With respect to U.S.S.G. § 5H1.6(B), he contends that the Court should depart downward based on his family ties and responsibilities. See Sentencing Memorandum at 15. He asserts that he is the primary caregiver for his mother, who has been diagnosed with high blood pressure, arthritis, and diabetes. See Sentencing Memorandum at 15. He represents that her diabetes is so severe that she has lost her eyesight and that he is responsible for her basic everyday needs. See Sentencing Memorandum at 15. He further asserts that he is the primary financial support for his wife and children, and that, without his support, the family faces severe hardship. See Sentencing Memorandum at 15-16. Valdez-Flores then argues that the Court should depart downward pursuant to U.S.S.G. § 2L1.2 based on his cultural assimilation. See Sentencing Memorandum at 16. He contends that he has lived in the United States since age two, that he went to school and worked in the United States, and that his family is in the United States. See Sentencing Memorandum at 16. He asserts that his

cultural ties were the primary motivation for his illegal re-entry.  See Sentencing Memorandum at 16.

On January 13, 2012, the USPO disclosed an Addendum to the Presentence Report ("Addendum to PSR"), responding to Valdez-Flores's Sentencing Memorandum.  With respect to U.S.S.G. § 5H1.3, the USPO asserts that Valdez-Flores has not had contact with his mother for one year and that there is no evidence that he was his mother's primary caregiver.  See Addendum to PSR at 1.  The USPO also points out that, while incarcerated, Valdez-Flores will be able to receive mental-health counseling and medications, if necessary to cope with his distress.  See Addendum to PSR at 1-2.  The USPO next asserts that Valdez-Flores' physical health "is not present to an unusual degree and [is] not distinguishable from typical cases covered by the guidelines," and that a departure, pursuant to U.S.S.G. § 5H1.4, is unwarranted.  See Addendum to PSR at 2.  With respect to U.S.S.G. § 5H1.6 and Valdez-Flores' family ties and responsibilities, the USPO contends that his family circumstances are unfortunate, but not so extraordinary such that they would warrant a departure.  See Addendum to PSR at 2.  It notes that the mother and maternal grandparents of his children are caring for them.  See Addendum to PSR at 2.  It also notes that Valdez-Flores has not had contact with his mother for a year, and that he has ten other siblings who legally reside in the United States and are capable of caring for their mother.  See Addendum to PSR at 2.  The USPO further asserts that a downward departure pursuant to U.S.S.G. § 2L1.2, based on cultural assimilation, is inappropriate, because Valdez-Flores has not assimilated into a law-abiding lifestyle.  See Addendum to PSR at 3.  It notes that Valdez-Flores has a criminal history dating back to age nineteen, which includes convictions for theft, battery, illegal entry, possession of forged papers, and possession of controlled substances.  See Addendum to PSR at 3.  The USPO asserts that Valdez-Flores committed this most recent offense while under a criminal justice sentence and notes

that he has been deported to Mexico five times.  See Addendum to PSR at 3.

On January 18, 2012, the United States filed its Response to Sentencing Memorandum Filed January 11, 2012.  See Doc. 22 ("Response").  The United States asserts that it agrees with the USPO's conclusions and reasoning in the Addendum to PSR.  See Response at 1.  It contends that the crux of its argument is that "Valdez-Flores has an extensive criminal history, has been removed to Mexico several times, and has an extended family who should be able to care for his mother and children during his incarceration."  Response at 1-2.  The United States argues that a within guidelines sentence is appropriate.  See Response at 2.

On January 23, 2012, the USPO disclosed a Memorandum that noted two changes to the PSR.  With respect to paragraph 28, the USPO asserts that Valdez-Flores should have been assessed 2 criminal history points, instead of 1, for his 2010 conviction for Count 1: Possess, Receive, or Pass a Forged Paper, Felony.  See Memorandum at 1.  The USPO notes that this correction requires changing paragraph 30 to reflect that Valdez-Flores' criminal history category is based on 14 criminal history points.  See Memorandum at 1.  The USPO asserts that these changes do not affect Valdez-Flores' criminal history category, which remains a VI.  See Memorandum at 1.

On January 25, 2012, the Court held a sentencing hearing.  At the hearing, the United States moved for a third-level reduction for acceptance of responsibility.  See Transcript of Hearing at 3:10-19 (January 25, 2012)(Court, Pflugrath, Jones)("Tr.").[2]  The United States also moved for a 1-level reduction pursuant to the Plea Agreement and to the Attorney General's fast track program. See Tr. at 3:20-4:4 (Court, Pflugrath, Jones).

Valdez-Flores first argued in support of a departure based on his cultural assimilation.  See

---

[2]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

Tr. at 5:11-12 (Jones).  Valdez-Flores asserted that he came to the United States when he was two years old, that he went to and graduated high school in the United States, that he does not have relatives in Mexico, and that he does not speak Spanish well.  See Tr. at 5:13-23 (Jones).  He noted that his eleven brothers and sisters, his mother, his wife, and his six children are all legally in the United States.  See Tr. at 5:23-25 (Jones).  Looking at the application notes to U.S.S.G. § 2L1.2, Valdez-Flores argued that the USPO emphasizes the seriousness of his criminal history and whether he engaged in additional criminal history after illegally re-entering the United States.  See Tr. at 6:4-11 (Jones).  Valdez-Flores emphasized that he was two when he moved to the United States and has lived in the United States since that time.  See Tr. at 6:11-15 (Jones).  He argued that his entire family resides in the United States.  See Tr. at 6:18-21 (Jones).  He asserted that his other grounds for a departure -- his health, his love for his mother, his family, and his work ethic -- are grounds that the Court hears from many defendants.  See Tr. at 7:8-13 (Jones).  He recognized that many individuals are deported when they are ill.  See Tr. at 7:13-14 (Jones).  He argued, however, that, had someone filled out the proper paperwork, he could have been a citizen.  See Tr. at 7:14-18 (Jones).  He also noted that he has been in jail for six months.  See Tr. at 7:19 (Jones).  Valdez-Flores recognized that there is no getting around his criminal history, but asserted that, if he was a United States citizen, he would not be facing the additional punishment of deportation.  See Tr. at 7:19-8:2 (Jones).  Valdez-Flores asked that the Court decrease his criminal history two points to get him below the 30 to 37 month range.  See Tr. at 8:19-22 (Jones).  The United States opposed a departure based on cultural assimilation.  See Tr. at 9:8-9 (Pflugrath).  The United States asserted that cultural assimilation focuses on assimilation as a law abiding citizen and noted that Valdez-Flores has a significant criminal history, with a number of chances to change his ways.  See Tr. at 9:8-11 (Jones).  It argued that Valdez-Flores earned his criminal history points the hard way -- one

at a time -- and noted that, even though his parents did not attempt to gain citizenship for him, from age eighteen to age twenty-six, when his criminal history became serious, Valdez-Flores could have attempted to obtain citizenship for himself. <u>See</u> Tr. at 9:9-18 (Pflugrath). The United States also noted that he could have joined the military, gone to college, or become a business person, if he intended to assimilate and become a productive member of the United States. <u>See</u> Tr. at 9:18-20 (Pflugrath). The United States asserted that Valdez-Flores did none of those things and that, at age twenty-six, he began down a criminal path. <u>See</u> Tr. at 9:20-22 (Pflugrath).

The Court stated that it agreed that many of the factors point towards cultural assimilation, but noted that Valdez-Flores' criminal history is extensive and that he continued to engage in criminal activity after his re-entry. <u>See</u> Tr. at 10:1-8 (Court). The Court asserted that it had difficulty saying that Valdez-Flores assimilated into a law-abiding lifestyle and that it does not believe a downward departure is warranted. <u>See</u> Tr. at 10:8-10 (Court).

With respect to his other grounds for a downward departure for his mental and emotional condition, his physical condition, and his family ties and responsibilities, Valdez-Flores asserted that the arguments in the Sentencing Memorandum were sufficient. <u>See</u> Tr. at 11:16-17 (Jones); <u>id</u>. at 12:8-9 (Jones); <u>id</u>. at 12:20-21 (Jones). The Court stated that, for reasons similar to those it had given for denying the motion for a downward departure based on cultural assimilation, it would decline to depart downward on grounds of a mental or emotional condition, a physical condition, or family ties and responsibilities. <u>See</u> Tr. at 11:20-12:1 (Court); <u>id</u>. at 12:24-13:5 (Court). The Court asserted that it would consider those grounds when determining whether it should vary downward. <u>See</u> Tr. at 12:1-13:10 (Court).

Valdez-Flores then argued in support of a variance. He asserted that all of his arguments for a downward departure also support a variance. <u>See</u> Tr. at 13:11-13 (Jones). He argued that, while

there may be many individuals who have emotional problems or family commitments, few defendants have the combination of factors that are present in this case.  See Tr. at 13:21-14:2 (Jones).  He also emphasized that he has been in the United States for almost his entire life and that he has contributed to society.  See Tr. at 14:2-4 (Jones).  Valdez-Flores asked that the Court vary so that he could go on caring for his mother and family.  See Tr. at 14:4-8 (Jones).  The United States asked that the Court admonish Valdez-Flores that, to the extent he has many ties to the United States and may return to the United States in the future, with his extensive criminal history, he is unable to return to the United States without the Secretary of Homeland Security's consent.  See Tr. at 15:12-18 (Pflugrath).  It noted that, if Valdez-Flores is found in the United States again, he will be facing a much more severe penalty.  See Tr. at 15:19-23 (Pflugrath).

## ANALYSIS

The Court will deny each of Valdez-Flores' requests for a downward departure.  Although many factors point towards Valdez-Flores' cultural assimilation, he has an extensive criminal history.  With respect to his family ties and mental and physical health, the Court does not believe that Valdez-Flores falls outside the heartland of cases that the Court sees before it.  The Court will, however, vary downward.  The Court will sentence Valdez-Flores to 21 months imprisonment.

## I.   THE COURT WILL NOT DEPART DOWNWARD BASED ON CULTURAL ASSIMILATION.

The United States and the USPO assert that Valdez-Flores is not entitled to a downward departure based on cultural assimilation, because he has not comported himself as a law-abiding citizen.  See Addendum to PSR at 3; Response at 1-2.  The Court agrees.  Application note 8 to U.S.S.G. § 2L1.2 states:

> There may be cases in which a downward departure may be appropriate on the basis of cultural assimilation.  Such a departure should be considered only in cases where

(A) the defendant formed cultural ties primarily with the United States from having resided continuously in the United States from childhood, (B) those cultural ties provided the primary motivation for the defendant's illegal reentry or continued presence in the United States, and (C) such a departure is not likely to increase the risk to the public from further crimes of the defendant.

In determining whether such a departure is appropriate, the court should consider, among other things, (1) the age in childhood at which the defendant began residing continuously in the United States, (2) whether and for how long the defendant attended school in the United States, (3) the duration of the defendant's continued residence in the United States, (4) the duration of the defendant's presence outside the United States, (5) the nature and extent of the defendant's familial and cultural ties inside the United States, (6) the seriousness of the Defendant's criminal history, and (7) whether the defendant engaged in additional criminal activity after illegally reentering the United States.

U.S.S.G. § 2L1.2 cmt. n.8.

Weighing these factors, the Court notes that many of these factors support a finding of cultural assimilation. The strength of two factors -- the seriousness of Valdez-Flores' criminal history and the additional criminal activity that he engaged in after illegally re-entering the United States -- counsel in favor of declining to depart on this ground. Valdez-Flores has resided in the United States since age two, has attended school in the United States, has lived in the United States for approximately thirty-six years, and his family lives in the United States. See Sentencing Memorandum at 16. Accordingly, the first five factors weigh in favor of finding cultural assimilation. Nevertheless, Valdez-Flores has a string of convictions and arrests for a variety of crimes, including: (i) a 1992 arrest for burglary; (ii) a 1995 arrest for possession of a controlled substance, for which he completed a diversion program; (iii) a 1995 petty theft arrest; (iv) a 1999 conviction for theft of personal property, for which he spent thirty days in custody and on which he violated his probation; (v) a 1999 conviction for battery, for which he received a thirty-day suspended sentence and three-years probation; (vi) a 2003 conviction for petty theft, for which he received a thirty-day suspended sentence, with credit for five-days time-served, two years probation,

and on which he violated his probation; (vii) a 2003 conviction for petty theft with a prior, for which he received a forty-five-day suspended sentence, with credit for eight-days time-served, and three-years probation, which was revoked; (viii) a 2003 conviction for petty theft and possession of a controlled substance for which he was sentenced to sixteen-months in custody; (ix) a 2004 conviction for illegal entry, for which he received 75 days in custody and was deported; (x) a 2004 arrest for possession of a controlled substance, possession of drug paraphernalia, and false identification to peace officers -- for which the charges were dismissed pursuant to plea negotiations; (xi) a 2006 conviction for petty theft with a prior, for which he received two-years in prison; (xii) and a 2010 conviction for possessing, receiving or passing a forged paper, for which he received 180-days in custody and three-years probation.  See PSR ¶¶ 21-28, 31-34, at 5-11. Valdez-Flores was deported on: (i) January 26, 2004; (ii) April 23, 2004; (iii) June 17, 2004; (iv) March 19, 2007; and (v) February 2, 2011.  See PSR ¶ 35, at 12.  Valdez-Flores' convictions for theft and possessing, receiving or passing forged papers came after he had previously been deported.  His arrest for possession of a controlled substance also came after he had previously been deported.  The United States Court of Appeals for the Tenth Circuit has recognized that a district court does not abuse its discretion when it concludes that a defendant's "extensive criminal history" precludes application of a departure for cultural assimilation.  United States v. Aragon-Concha, 424 F.App'x 763, 765 (10th Cir. 2011)(unpublished).  The Honorable William P. Johnson, United States District Judge for the District of New Mexico, has also found that a defendant may not qualify for a cultural assimilation departure when he has an extensive criminal history.  See United States v. Vallecillo-Rodriguez, 770 F.Supp.2d 1194, 1202-03 (D.N.M. 2011)(Johnson, J.).

A departure is authorized under the guidelines, but the Court will decline to grant a departure for cultural assimilation. Although few of Valdez-Flores' crimes appear to have been violent, they

are sufficiently numerous to give the Court serious concerns.  Furthermore, his criminal activity in the United States continued after having been previously deported.  The Court concludes that Valdez-Flores has not assimilated into a law-abiding lifestyle and that a departure is not warranted. Unfortunately, the Court sees many defendants with circumstances similar to Valdez-Flores who would fit into the cultural-assimilation category, but for their extensive criminal history.  The Court has trouble distinguishing Valdez-Flores circumstances from the many other defendants that the Court sees.  The Court therefore finds that his case remains within the heartland of cases, and, even though a departure is authorized under the guidelines, the Court will exercise its discretion not to depart.

## II.     THE COURT WILL NOT DEPART BASED ON VALDEZ-FLORES' MENTAL AND EMOTIONAL CONDITIONS.

Valdez-Flores asks that the Court depart based on U.S.S.G. § 5H1.3, because, he asserts, his worries for his mother and children have caused him to become depressed.  See Sentencing Memorandum at 14.  U.S.S.G. § 5H1.3 provides that "Mental and emotional conditions may be relevant in determining whether a departure is warranted, if such conditions, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines."  When interviewed for the PSR, Valdez-Flores reported that he has never been diagnosed with or treated for any mental or emotional disorder.  See PSR ¶ 47, at 15.  Valdez-Flores' depression appears to be self-diagnosed.  See Sentencing Memorandum at 14.  Valdez-Flores' circumstances are not unusual.  Many defendants, when convicted of a crime, worry what will become of family members for whom they provided the primary means of support.  The Court does not believe, however, that these circumstances justify a departure pursuant to U.S.S.G. § 5H1.3.  The Court has previously declined to depart pursuant to

this guideline in similar circumstances.  See United States v. Urive-Gonzalez, No. 09-3561, 2010

WL 4053714, at *2 (D.N.M. Aug. 31, 2010)(Browning, J.)(declining to depart where the defendant

argued that he was depressed because of his wife's sickness and death).  The Court acknowledges

that the guidelines authorize a departure on these grounds, but does not believe that Valdez-Flores'

circumstances are extraordinary or sufficiently unique to warrant a downward departure.  The Court

is unable to distinguish the circumstances of this case from the heartland of case and will therefore

exercise its discretion to decline to depart downward based on Valdez-Flores' mental and emotional

conditions.

III.    **THE COURT WILL NOT DEPART DOWNWARD BASED ON VALDEZ-FLORES'
        PHYSICAL CONDITION.**

        Valdez-Flores asks that the Court depart downward based on his tuberculosis.  The USPO

and the United States assert that his condition is not present to an unusual degree.  See Addendum

to PSR at 2; Response at 1-2.  U.S.S.G. § 5H1.4 is a policy statement which provides that

> Physical condition or appearance, including physique, may be relevant in
> determining whether a departure in warranted, if the condition or appearance,
> individually or in combination with other offender characteristics, is present to an
> unusual degree and distinguishes the case from the typical cases covered by the
> guidelines.  An extraordinary physical impairment may be a reason to depart
> downward; e.g., in the case of a seriously infirm defendant, home detention may be
> as efficient as, and less costly than, home detention.

U.S.S.G. § 5H1.4.  The Tenth Circuit has affirmed a district court denial of a downward departure

in similar circumstances.  See United States v. Martinez-Villa, 221 F.App'x 751, 755-56 (10th Cir.

2007).  In United States v. Martinez-Villa, the defendant had a "chronic, significant, uncontrollable

cough which causes a choking sensation and may be related to tuberculosis."  221 F.App'x at 752.

The Court recognizes that tuberculosis is an increasing problem in the nation's prisons, see Perez

v. Velasco, No. 98-8018, 2001 WL 844496, at *1 (N.D. Ill. July 23, 2001)("The incidence of

tuberculosis in prisons has been on the rise since the early 1980's."), especially those that incarcerate larger numbers of illegal immigrants, such as the La Tuna Federal Correctional Institution.  The Court does not believe, however, that Valdez-Flores' symptoms -- a cough and fatigue -- remove his case from the heartland of cases which appear before the Court.  To justify a departure, a physical condition must be present to an unusual degree.  The Bureau of Prisons ("BOP") has model facilities at Fort Worth, and elsewhere, and the Court is confident of the BOP's ability to handle tuberculosis as it does any other disease.  The Court does not believe that Valdez-Flores' circumstances are extraordinary and, although a departure is authorized, the Court will decline to exercise its discretion to depart downward based on physical condition.

## IV.    THE COURT WILL NOT DEPART DOWNWARD BASED ON FAMILY TIES AND RESPONSIBILITIES.

Valdez-Flores asks the Court to depart pursuant to U.S.S.G. § 5H1.6(B), because he is his mother's primary caregiver and the primary financial support for his children.  See Sentencing Memorandum at 15.  The USPO and the United States assert that there are other family members available to care for Valdez-Flores' mother and children, and that Valdez-Flores has not seen his mother in over a year.  See Addendum to PSR at 3; Response at 1-2.  The Court agrees that this case does not fall outside the heartland of cases.  The United States Sentencing Commission has noted that "family ties and responsibilities are not ordinarily relevant in determining whether a departure may be warranted."  U.S.S.G. § 5H1.6.  In a prior case, the Court permitted a downward departure under this guideline where the defendant had a daughter and a grandchild with severe health problems, both of whom required significant attention and could not live alone.  See United States v. Martinez, No. 09-3078, 2011 WL 6828055, at *5 (D.N.M. Dec. 19, 2011)(Browning, J.). Additionally, the daughter's father was a severe alcoholic who was unable to care for children, and

the defendant had no family members living in or near New Mexico.  See United States v. Martinez, 2011 WL 6828055, at *5.  Furthermore, the Court has denied departures under this guideline in cases with more compelling facts than this one.  For example, in United States v. Ledezma-Ledezma, No. 10-1924, 2011 WL 3957553 (D.N.M. Sept. 2, 2011)(Browning, J.), the Court denied a downward departure under this guideline when the defendant argued he had traveled to the United States to protect his children, whom one of his stepchildren was allegedly sexually abusing.  See 2011 WL 3957553, at *2-3.  Family members often suffer from the choices defendants make, but the Court does not believe it is appropriate to depart on this basis.  Moreover, it appears that Valdez-Flores' family members have other family that they can turn to for support.  The PSR notes that Valdez-Flores' wife, Maria Imelda Sosa, cares for his two youngest children, while Sosa's parents care for the other four children.  See PSR ¶ 42, at 14.  The USPO also asserts that Valdez-Flores' mother has eleven other children in the United States who can contribute towards her care and that there is no evidence that Valdez-Flores was his mother's primary caregiver.  See Addendum to PSR at 1-2.  Accordingly, this case remains within the heartland of cases, and the Court will exercise its discretion to not depart downward on this basis.

## V.     THE COURT WILL VARY DOWNWARD AND WILL SENTENCE VALDEZ-FLORES TO 21-MONTHS IMPRISONMENT.

Valdez-Flores asks the Court for a sentence of probation or a sentence of less than two-years imprisonment.  The United States asks that the Court sentence Valdez-Flores within the applicable guideline range.  The Court has reviewed the PSR's factual findings, and, there not being any objections to those findings, the Court adopts them as its own.  The Court has also reviewed the PSR's guidelines calculation, and, with the corrections noted in the Memorandum, the Court adopts those calculations as its own as well.  The Court has considered the factors set forth in 18 U.S.C.

§ 3553(a).

Before any downward departure, the offense level is 13 and the criminal history category is VI, establishing a guideline imprisonment range of 33 to 41 months.  Pursuant to rule 11(c)(1)(C) and U.S.S.G. § 5K3.1, the Court accepts the Plea Agreement, which provides for a 1-level offense reduction, as the Court is satisfied that the agreed-on offense level reduction departs for justifiable reasons.  The Plea Agreement is pursuant to a non-standard fast track plea agreement.  In section 401(m)(2)(b) of the PROTECT Act, Congress approved early disposition or fast track programs if certain conditions are met.  The Court believes that these conditions are met in this case and that this departure is in the lower part of the range of departures that Congress allowed.  The Court accepts the Plea Agreement, and the Court's sentence will be consistent with it.  An offense level of 12 and a criminal history category of VI establishes a guideline imprisonment range of 30 to 37 months.

The Court notes that Valdez-Flores illegally re-entered the United States after previously being deported and subsequent to a felony conviction.  The Court has, as the record will reflect, considered the guidelines, but in arriving at its sentence, has taken account not only of the guidelines, but of other sentencing goals.  Specifically, the Court has considered the guideline sentencing range established for the applicable category of offense committed by the applicable category of defendant.  After carefully considering Valdez-Flores' circumstances, the Court concludes that the punishment set forth in the guidelines is not appropriate for this offense.  The Court then considered the kinds of sentences and ranges established in the guidelines and concludes that some variance is appropriate.  The Court has identified six factors that counsel in favor of a variance.  The Court believes that, while Valdez-Flores does not meet all the factors for a cultural-assimilation downward departure, he came to the United States at the age of two when he had no choice; he was educated and worked in the United States; he has lived in the United States for the

majority of his life; and his family is in the United States legally.  These circumstances counsel in favor of some sentence reduction.  The Court also notes that, while his physical, mental, and emotional conditions, do not justify a departure, the Court believes that his tuberculosis supports a variance.  Furthermore, Valdez-Flores has extensive family ties and responsibilities.  Valdez-Flores has six children who are United States citizens, and he has a close relationship with his mother, who is ill.  The Court also notes that Valdez-Flores had two steady periods of employment: (i) from 1994 to 2004, he worked as an ice-cream distributer; and (ii) from 2004 to 2010, he was employed as a warehouse laborer.  See PSR ¶¶ 53-54, at 16.  Valdez-Flores had no significant criminal history until age 26, and the Court believes this breakdown is attributable to problems with drugs, problems which now appear to be under control.  The Court believes that these factors counsel in favor of a variance.  The Court concludes that there are, however, three factors which weigh against a variance.  The most notable negative factor is Valdez-Flores' extensive criminal history.  Additionally, Valdez-Flores has been deported to Mexico five times and continues to return, disregarding the United States's laws.  Furthermore, Valdez-Flores has a significant extended family in the United States who should be able to care for his mother and children while his is incarcerated.  This fortunate circumstance puts Valdez-Flores in an enviable position compared to many defendants whom the Court sees.  The Court believes that these three factors undercut, to some extent, the request for a variance.

Nonetheless, there are more factors that counsel in favor of a variance than not.  The Court will therefore vary the equivalent of 3 offense levels.  A total offense level of 9 and a criminal history category of VI would establish a guideline imprisonment range of 21 to 27 months.  The Court believes that a sentence of 21 months, which is in line with the request for a sentence of less than two-years, is appropriate.  The Court believes that this sentence continues to reflect the

-18-

seriousness of this offense, and it is much longer than any sentence he has received for a re-entry offense. For his 2004 conviction for illegal entry, Valdez-Flores received a sentence of 75 days in custody. The Court also finds that its sentence provides a more just punishment, because of the factors which the Court has identified and because this sentence is the longest sentence that Valdez-Flores has received for re-entry. The Court concludes that a 21-month sentence affords adequate deterrence on a general level, because this sentence is the longest one Valdez-Flores has received for a re-entry offense. The Court is concerned whether any sentence will specifically deter Valdez-Flores given his ties to the United States and his history of re-entering the country. Given the nature of Valdez-Flores criminal history -- which includes few violent or more serious offenses -- the Court believes that this sentence is adequate to protect the public. Additionally, given how close Valdez-Flores is to receiving a cultural-assimilation departure, the Court believes that this sentence avoids sentencing disparities among defendants with similar criminal histories who have been found guilty of similar offenses.

The Court finds that this sentence fully and effectively reflects each of the factors embodied in 18 U.S.C. § 3553(a). While the Court's task, as a district court, is not to arrive at a reasonable sentence -- it is to come up with one that reflects the factors in 18 U.S.C. § 3553(a), see United States v. Conlan, 500 F.3d 1167, 1169 (10th Cir. 2007)("[A] district court's job is not to impose a reasonable sentence. Rather, a district court's mandate is to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of section 3553(a)(2)." (citation omitted)) -- the Court believes this sentence is reasonable, more reasonable than the applicable guidelines sentence, and reflects accurately the factors in 18 U.S.C. § 3553(a). Finally, the Court believes that this sentence is sufficient without being greater than necessary to comply with the purposes of punishment Congress set forth in the Sentencing Reform Act of 1984, Pub. L. No. 98-473, 98 Stat.

1987 (codified as amended in scattered sections of 18 U.S.C.).  The Court sentences Valdez-Flores to 21-months imprisonment.

IT IS ORDERED that the requests in the Defendant's Sentencing Memorandum, filed January 11, 2012 (Doc. 21), are granted in part and denied in part.  The Court will not depart downward on any of the grounds which Defendant Jesus Valdez-Flores identified, but will vary downward to a sentence of 21-months imprisonment.

_____
UNITED STATES DISTRICT JUDGE

Counsel:

Kenneth J. Gonzales
  United States Attorney
Bill Pflugrath
Jeremy Pena
  Assistant United States Attorneys
Albuquerque, New Mexico

        Attorneys for the Plaintiff

P. Jeffery Jones
Hugh W. Dangler
P. Jeffery Jones P.C.
Santa Fe, New Mexico

        Attorneys for the Defendant